IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RAYMOND PROFESSIONAL GROUP, INC. and RAYMOND PROFESSIONAL GROUP -- DESIGN/BUILD, INC. f/k/a RAYMOND MANAGEMENT SERVICES, INC., | ) ) ) ) ) | |
| Appellants, | ) ) | 09 C 6037 and 10 C 5325 (consolidated) |
| v. | ) ) | Judge George W. Lindberg |
| WILLIAM A. POPE CO., | ) ) | |
| Appellee. | ) | |

**MEMORANDUM OPINION AND ORDER**

These consolidated cases are the appeals of various judgments and orders entered by the bankruptcy court in adversary proceeding 07 C 639. For the reasons stated below, the bankruptcy court's judgments and orders are affirmed.

**I.  Factual Background and Procedural History**

The following facts are taken from the bankruptcy court's findings of fact. See *In re Raymond Prof'l Group, Inc.*, 408 B.R. 711 (Bankr. N.D. Ill. 2009). In 2000, appellant Raymond Professional Group - Design/Build, Inc., f/k/a Raymond Management Services, Inc. ("RMS") entered into a contract with AES Medina Valley Cogen, LLC ("AES"), under which RMS agreed to build a power plant for AES. *Id.* at 750-51. RMS, in turn, entered into a subcontract with appellee William A. Pope Co. ("Pope"). *Id.* at 754. The subcontract between RMS and Pope did not specify an amount of money to be paid to Pope, but rather provided that the revenues paid to the project would be allocated as follows:

> First, to pay the costs incurred by the Project to third parties; second, to reimburse RMS and [Pope] for their own costs and the time spent by their own personnel on

> the Project, including costs incurred in the preparation of the proposal; third, to
> provide an allowance to each of RMS and [Pope] for the succeeding month's
> projected expenses; and finally, the remainder shall be divided equally between
> RMS and [Pope].

*Id.* at 755. According to RMS's president, the approximate value of this subcontract, including profit, was $22,010,000. *Id.* at 756. Pope was not a party to any contract with AES. *Id.* at 752.

The subcontract required RMS and Pope to create an escrow account for the purpose of depositing excess project revenues and making distributions by agreement of the parties' principals. *Id.* at 757. However, in order to get a higher rate of return on deposited funds, RMS and Pope agreed to open a commercial checking account (the "Account") instead. *Id.* at 757. The Account required the dual signatures of an RMS representative and a Pope representative to disburse funds or make changes to the Account. *Id.* at 757-58. Money was deposited into the Account beginning in February 2001. *Id.* at 760.

As work proceeded on the project, Pope submitted invoices to RMS for payment, and RMS in submitted invoices to AES for work that Pope and others did. *Id.* at 759-61. Various disputes arose between RMS and Pope, and RMS stopped paying Pope for Pope's work after March 2001. *Id.* at 760-61. According to RMS's March 6, 2001 Sworn Statement for Contractor to Owner, submitted to AES in connection with RMS's February 2001 pay request, Pope's Balance to Complete at that time was $3,198,057.34. *Id.* at 761. Pope made a claim on RMS's payment bond on May 23, 2001, and executed a Notice of Claim of Subcontractor on June 19, 2001. *Id.*

RMS and Pope entered into an interim settlement agreement on September 26, 2001. *Id.* at 762. Under this interim agreement, RMS agreed to pay Pope $2,808,671 from the Account after making payments for various third-party costs. *Id.* at 764. Pope claimed that RMS owed it

2

more than this amount. *Id.* at 764. Only $220,000 was paid to Pope under the interim settlement agreement. *Id.* at 770.

After the project was completed in September 2001, disputes also arose between RMS and AES. *Id.* at 770, 772-73. In order to assist RMS in settling its claims with AES, RMS asked Pope to provide a final lien waiver. *Id.* at 774. On January 30, 2003, Pope executed a final lien waiver which stated:

> THE undersigned for and in consideration of Ten Dollars ($10.00) Dollars, and other good and valuable consideration, the receipt whereof is hereby acknowledged, do(es) hereby waive and release any and all lien or claim of, or right to, lien . . . .

*Id.* at 774-75. Pope's lien waiver also included a section entitled "CONTRACTOR'S AFFIDAVIT," which listed Pope's contract value for the project as $22,900,000, and acknowledged that Pope had received $19,656,738.54 in payments. *Id.* at 775-76. The difference between the contract value and the amount Pope had been paid, as indicated in the contractor's affidavit, was $3,243,261.46. *Id.* at 776. RMS also provided a lien waiver of its own to AES in connection with the settlement. *Id.* at 776. On February 4, 2003, pursuant to the settlement agreement between RMS and AES, AES deposited $2.5 million directly into the Account. *Id.* at 777.

Several days later, Pope again demanded payment from RMS. *Id.* RMS refused to release any funds to Pope. *Id.* On September 9, 2003, RMS filed a demand for arbitration against Pope pursuant to the subcontract, requesting that the arbitrators allocate between RMS and Pope the sums previously paid by AES. *Id.* at 782-83. In its answer and counterclaim in the arbitration proceeding, Pope sought a determination of what additional sums were due Pope under the interim settlement agreement between Pope and RMS. *Id.* at 783. The arbitration was

an audit of project costs. *Id.* at 785. Neither party sought a determination regarding the ownership of the Account. *Id.* at 783.

On November 30, 2006, the arbitration panel issued its award. *Id.* at 785. The award found that Pope was to be paid $3,634,714, with the Account to be one source of payment. *Id.* at 786. Any remaining balance was to be paid by RMS. *Id.* The arbitration award also denied all of RMS's claims. *Id.* at 785. The amount due Pope exceeded the amount held in the Account. *See id.* at 786.

RMS and appellant Raymond Professional Group, Inc. ("RPG") filed for voluntary Chapter 11 bankruptcy relief on December 18, 2006. *Id.* at 787. RPG is the 100 percent shareholder of RMS. *Id.* at 750.

In the bankruptcy case, RMS brought an adversary proceeding against Pope, in which it sought to vacate the arbitration award. See *In re Raymond Prof'l Group, Inc.*, 397 B.R. 414 (Bankr. N.D. Ill. 2008). The bankruptcy court confirmed the arbitration award, and entered judgment in Pope's favor. *Id.* at 420, 437-38. This judgment was not appealed.

Meanwhile, RPG (later joined by RMS) also brought adversary proceeding 07 A 00639 against Pope. See *In re Raymond Prof'l Group, Inc.*, 408 B.R. at 711. Among other things, RPG and RMS sought a declaration that the funds in the Account are not held in trust, and sought to avoid the arbitration award as a preference. *Id.* at 720-21. The bankruptcy court bifurcated Count VI for trial separately from the other counts, and entered judgment in Pope's favor on Count VI of the adversary complaint. *Id.* at 711, *amended by* 410 B.R. 813 (Bankr. N.D. Ill. 2009). Specifically, the bankruptcy court found that all funds in the Account were held in trust for Pope's sole benefit, and that those funds were not property of the bankruptcy estate of

4

either RMS or RPG. 410 B.R. at 813, 815-16. RMS and RPG filed an appeal of that judgment here under case number 09 C 6037. This Court stayed that appeal pending the bankruptcy court's resolution of the remaining counts of the adversary proceeding.

On May 20, 2010, the bankruptcy court entered judgment in Pope's favor on RMS and RPG's claims in Counts II through V.[1] See *In re Raymond Prof'l Group, Inc.,* No. 06 B 16748/07 A 00639, 2010 WL 2036371 (Bankr. N.D. Ill. May 20, 2010). The bankruptcy court concluded that those claims failed because the arbitration award did not transfer any property interest to Pope. *Id.* at *10. RMS and RPG appealed the bankruptcy court's judgment as to Count III here under case number 10 C 5325, which has been consolidated with case number 09 C 6037.

## II.   Issues on Appeal

RMS and RPG raise the following issues on appeal:

- Whether the bankruptcy court erred in finding that all of the funds in the Account are held in trust for Pope's benefit;

- Whether the bankruptcy court erred by ordering the transfer of all funds in the Account into a separate account owned by Pope;

- Whether the bankruptcy court erred by approving Pope's bill of costs in connection with the judgment on Count VI;

- Whether the bankruptcy court erred in holding that the arbitration award did not effect a preferential transfer of funds; and

- Whether the bankruptcy court abused its discretion when it denied RMS and RPG's motion to sanction Pope and its prior counsel.

---

[1] The bankruptcy court had previously dismissed RPG's claim in Count I of the adversary proceeding. See *In re Raymond Prof'l Group, Inc.*, No. 06 B 16748/07 A 00639, 2010 WL 2026704 (Bankr. N.D. Ill. May 20, 2010).

5

**III.    Analysis**

On appeal, this Court may affirm, modify, or reverse the bankruptcy court's judgments, or remand with instructions for further proceedings.  *See* Fed. R. Bankr. P. 8013.  The Court reviews the bankruptcy court's factual findings for clear error, and reviews its legal conclusions *de novo*.  *See In re Doctors Hosp. of Hyde Park, Inc.*, 474 F.3d 421, 426 (7th Cir. 2007).

The Court begins by considering RMS and RPG's argument that the bankruptcy court erred in finding that all of the funds in the Account are held in trust for Pope's benefit.  At the time the bankruptcy court entered judgment on Count VI in 2009, the funds in the Account amounted to approximately $3.3 million.  *See In re Raymond Prof'l Group, Inc.*, 408 B.R. at 727 n.4.  The bankruptcy court concluded that the entire amount was held in trust for Pope under the Illinois Mechanics Lien Act.  *See In re Raymond Prof'l Group, Inc.*, 410 B.R. at 813-15.  According to the bankruptcy court, since these funds were held in trust for Pope, they are not part of RMS's or RPG's bankruptcy estate.  *See id.* at 813.

In the construction industry, "[i]t is not uncommon . . . for a contractor or subcontractor to furnish a lien waiver swearing she has been paid even though, in fact, she has not been paid." 24 Ill. Prac., Ill. Construction Law Manual § 13:46 (2009-10 ed.).  Thus, the Illinois Mechanics Lien Act creates a trust when a contractor or subcontractor provides a lien waiver in exchange for payment or the promise of payment.  *See* 770 ILCS 60/21.02(a).  According to the version of the Act the parties agree was in effect at the time of the events in this case:

> Any owner, contractor, subcontractor, or supplier of any tier who requests or requires the execution and delivery of a waiver of mechanics lien by any person who furnishes labor, services, or materials for the improvement of a lot or a tract of land in exchange for payment or the promise of payment, *shall hold in trust the unpaid sums subject to the waiver of mechanics lien*, as trustee for the person who furnished the labor, services, or materials.

6

770 ILCS 60/21.02(a) (emphasis added). "[T]he purpose of the Act is to protect contractors and subcontractors providing labor and materials for the benefit of an owner's property." *Weather-Tite, Inc. v. Univ. of St. Francis*, 909 N.E.2d 830, 834 (Ill. 2009).

RMS and RPG concede that some funds in the Account are held in trust for Pope pursuant to the Illinois Mechanics Lien Act, but take issue with the bankruptcy court's conclusion that all of the funds in the Account are held in trust. RMS and RPG argue that in Section 21.02(a), the phrase "unpaid sums subject to the waiver of mechanics lien" means the amount of consideration stated on the face of the lien waiver. They contend that in this case, the "unpaid sums subject to the waiver of mechanics lien" amount to only ten dollars, because Pope's January 30, 2003 final lien waiver stated that it was given "for and in consideration of Ten Dollars ($10.00) Dollars, and other good and valuable consideration." RMS and RPG cite no authority that defines "unpaid sums subject to the waiver of mechanics lien" as they propose, and there appear to be no cases that address the meaning of this phrase in Section 21.02(a).

This Court agrees with the bankruptcy court that it is "absurd" to argue that the "unpaid sums" held in statutory trust for Pope's benefit amounted to only ten dollars. *See In re Raymond Prof'l Group, Inc.*, 408 B.R. at 734. It is undisputed that Pope sent its final lien waiver to AES in order to facilitate the settlement between RMS and AES, and ensure that AES would release $2.5 million in settlement funds. *See id.* at 774-76. There was no indication that by doing so Pope intended to reduce its claim to ten dollars, or to any amount short of what it was actually owed. Indeed, the contractor's affidavit that is part of the lien waiver made clear that the opposite was true, since it indicated that the unpaid sum due Pope was $3,243,261.46. *See id.* at 776. Moreover, as the bankruptcy court noted, the lien waiver also states on its face that it was

7

given for "other good and valuable consideration."  *See id.* at 775.

The bankruptcy court also correctly dismissed RMS and RPG's argument that despite the recitation in the contractor's affidavit that Pope had been paid only approximately $19.7 million on a $22.9 million contract, the contractor's affidavit actually showed that no further amounts were due Pope.  Following the statement in the contractor's affidavit indicating that Pope had received approximately $3.2 million less than the total amount of the contract, was a table in which to identify:

> [T]he names and addresses of all parties who have furnished material or labor, or both, for said work and all parties having contracts or sub contracts for specific portions of said work or for material entering into the constructions thereof and the amount due or to become due to each, and that the items mentioned include all labor and material required to complete said work according to plans and specifications.

*See In re Raymond Prof'l Group, Inc.*, 408 B.R. at 476.  Because this table was left blank, RMS and RPG suggest that Pope must be due nothing.  This Court finds no error in the bankruptcy court's conclusion that the blank table indicated merely that Pope was not reporting that any of its own subcontractors remained unpaid.  *See id.* at 737.

RMS and RPG contend that even if the "unpaid sums subject to the waiver of mechanics lien" amount to something more than nothing or ten dollars, the bankruptcy court should have valued Pope's claim at $995,000, the "balance to complete" stated in RMS's September 2001 Sworn Statement.  Falling back further, RMS and RPG argue that at very most, the bankruptcy court should have valued Pope's claim as the $2.5 million paid by AES into the Account upon receipt of Pope's final lien waiver.

As the bankruptcy court correctly held, a statutory trust was impressed on the entire amount held in the Account at the time RMS and Pope provided their final lien waivers to AES.

8

First, the $2.5 million paid by AES into the Account certainly constituted an unpaid sum on the project that was subject to Pope's and RMS's final lien waivers given in exchange for it. Thus, at the very least, these funds were held in trust for the benefit of Pope and RMS, with the value of their respective interests later determined in the arbitration proceeding.

RMS and RPG also challenge the bankruptcy court's conclusion that a statutory trust was impressed on the funds that were already in the Account before the settlement funds were deposited (the "Existing Funds"). The bankruptcy court held that since the Account had not contained sufficient funds to satisfy all of RMS and Pope's lien claims at any point since AES deposited the settlement funds on February 4, 2003, all funds on deposit in the Account were impressed with a statutory trust for the benefit of RMS and Pope. *See In re Raymond Prof'l Group, Inc.*, 410 B.R. at 815. The arbitration award found that no monies are due RMS, and that RMS's mechanics trust lien claim is valueless. *Id.*

At the time RMS and Pope sent their final lien waivers to AES, the Existing Funds in the Account totaled $376,622.45. *See In re Raymond Prof'l Group, Inc.*, 2010 WL 2036371, at *9. The Existing Funds had entered the Account in multiple deposits in 2001 and 2002. *Id.* at *9. Some of these funds came directly from AES; others came from AES through RMS; and others came from RPG's operating account, pursuant to the September 2001 interim settlement agreement between RMS and Pope.[2] *Id.* All of these funds were related to the AES project, and were payments governed by the terms of the subcontract and other agreements between RMS

---

[2] In addition, on September 13, 2002, a check in the amount of $5,756.67, payable to Pope from Kelso-Burnett Co., was deposited into the Account. *See In re Raymond Prof'l Group, Inc.*, 2010 WL 2036371, at *9. The bankruptcy court declined to discuss these funds because the check was "relatively small and because there is no colorable claim that these funds belonged only to RPG or RMS." *Id.* This Court will also disregard this check, as RMS and RPG make no argument in these appeals that they are entitled to it.

9

and Pope. *See id.* at *10.

This Court agrees with the bankruptcy court that the unpaid sums subject to Pope's final lien waiver were the total funds then due Pope. The Court also finds that it was reasonable for the bankruptcy court to find that the amount due Pope exceeded the amount of funds in the Account. As noted above, the contractor's affidavit that was part of Pope's final lien waiver indicated that the unpaid sum then due Pope was $3,243,261.46, and the arbitration award ultimately found that Pope was due $3,634,714. *See In re Raymond Prof'l Group, Inc.*, 408 B.R. at 776, 786. Accordingly, the bankruptcy court correctly held that all of the project funds in the Account were impressed with a statutory trust. Since these funds were held in trust for Pope, they are not part of the bankruptcy estate of RMS or RPG. *See U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.10 (1983) (noting that "property of others held by the debtor in trust" at the time a bankruptcy petition is filed is not part of the debtor's bankruptcy estate).

However, even if a statutory trust was not impressed on the funds in the Account, Pope is nevertheless entitled to them under its agreements with RMS. The arbitration award found that Pope was owed more than the total amount in the Account, and denied all of RMS's claims. *See In re Raymond Prof'l Group, Inc.*, 408 B.R. at 785-86. The bankruptcy court confirmed the arbitration award, and RMS and RPG did not appeal the judgment. *See In re Raymond Prof'l Group, Inc.*, 397 B.R. at 420, 437-38.

The only way that RMS and RPG now claim to have any interest in the funds in the Account is by virtue of the fact that RMS and Pope held the Account as tenants in common. As RMS and RPG observe, the bankruptcy court concluded that RMS and Pope were tenants in common, and none of the parties has challenged this conclusion. *See In re Raymond Prof'l*

*Group, Inc.* 408 B.R. at 738. As a result of the tenancy in common, RMS and RPG argue, RMS held a half-interest in any funds in the Account that are not subject to a statutory trust.

The bankruptcy correctly rejected this argument. Although it is true that tenants in common are presumed to hold equal interests, this presumption may be rebutted. *See Sturdyvin v. Ward*, 168 N.E. 666, 669 (Ill. 1929). Here, the subcontract and other agreements between Pope and RMS governed how their interests in the Account would be allocated. For example, the subcontract provided that only after RMS, Pope and others were reimbursed for their costs would the remainder of revenues paid to the project be equally divided between RMS and Pope. *See In re Raymond Prof'l Group, Inc.,* 408 B.R. at 755. Under these agreements, RMS had no interest in any of the funds in the Account when it declared bankruptcy, and accordingly its bankruptcy estate is not entitled to the funds.

Since RMS and RPG have not shown that they had any valid interest in the funds in the Account, their argument that the arbitration award was a preferential transfer also fails. RMS and RPG argue that the November 30, 2006 arbitration award in Pope's favor transferred RMS's interest in the Account funds to Pope. RMS and RPG contend that this transfer occurred within ninety days before the bankruptcy filing on December 18, 2006, and therefore constituted an avoidable preference that should be set aside pursuant to 11 U.S.C. § 547(b). According to RMS and RPG, at least half of the funds in the Account (the share which RMS contends it holds as a tenant in common with Pope) should be included in RMS's bankruptcy estate.

Section 547(b) permits a bankruptcy trustee to avoid a transfer of a debtor's property interest to a creditor made within ninety days before the date of the filing of the bankruptcy petition, if the transfer meets various statutory requirements. 11 U.S.C. § 547(b). The

11

Bankruptcy Code defines a "transfer" broadly, as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with" property or a property interest. 11 U.S.C. § 101(54)(D). In this context, a debtor's property "is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Warsco v. Preferred Technical Group*, 258 F.3d 557, 564 (7th Cir. 2001) (quoting *Begier v. IRS*, 496 U.S. 53, 58 (1990)). The bankruptcy court held that the arbitration award did not effect such a transfer of RMS or RPG's property. *See In re Raymond Prof'l Group, Inc.,* 2010 WL 2036371 at *7-8.

As discussed above, RMS and RPG have not shown that they had any interest in the funds in the Account. The arbitration award did not transfer any interest of RMS to Pope, or otherwise create an interest in Pope's favor. Rather, it made a finding as to the value of Pope's pre-existing interest under the agreements between RMS and Pope. As the bankruptcy court correctly concluded, the arbitration award did not effect a transfer of RMS's property under 11 U.S.C. § 547(b).

Given this Court's conclusion that the bankruptcy court did not err in finding that Pope was entitled to all of the funds in the Account, this Court also affirms the bankruptcy court's order transferring the Account funds to a new account accessible only to Pope, and the bankruptcy court's approval of Pope's bill of costs as to Count VI of the adversary complaint.

Finally, the Court considers RMS and RPG's argument that the bankruptcy court erred in denying their request to sanction Pope and its counsel. Shortly after the adversary proceeding was filed in the bankruptcy court, Pope filed a motion to disqualify RMS and RPG's counsel, Schiff Hardin LLP ("Schiff"), on various grounds. *See In re Raymond Prof'l Group, Inc.*, 420

B.R. 448, 454 (Bankr. N.D. Ill. 2009). The parties agreed to delay proceeding on that motion until after Count VI was decided. *Id.* However, before Count VI had been resolved, Pope sought to renew its motion to disqualify and add an issue to the original motion. *Id.* at 454-55. Pope's new basis for seeking to disqualify Schiff was that Pope claimed to have learned during pretrial discovery that Schiff had received a check drawn on the Account that contained the signatures of officers of both RPG and Pope. *Id.* at 454-55. The check was used for the payment of attorneys' fees. *Id.* at 454. Pope contended that payment of these attorneys' fees created an attorney-client relationship between Schiff and Pope, and therefore created a direct conflict of interest in Schiff's representation of RMS and RPG. *Id.* at 454-55.

RMS and RPG's counsel sent a "safe harbor" letter to Pope pursuant to Federal Rule of Bankruptcy Procedure 9011, in which they demanded that Pope withdraw its motion and supporting filings. *Id.* at 455. Pope declined to do so. *Id.* The parties briefed the new issue, and the bankruptcy court held an evidentiary hearing on it. *Id.* The bankruptcy court ruled that no attorney-client relationship existed between Pope and Schiff (and that if any had existed, it was waived), and denied the motion to disqualify. *See In re Raymond Prof'l Group, Inc.*, 400 B.R. 624, 629 (Bankr. N.D. Ill. 2009).

Following this ruling, RMS and RPG moved to sanction Pope and its counsel, pursuant to Rule 9011 and 28 U.S.C. § 1927, for pursuing the motion to disqualify. *In re Raymond Prof'l Group, Inc.*, 420 B.R. at 456. The bankruptcy court concluded that although it had found that the evidence did not justify granting the motion to disqualify, there had been an adequate basis in law and fact to support filing the motion. *Id.* at 468. The bankruptcy court also found that RMS and RPG had not shown that Pope had filed the motion for an improper purpose. *Id.* at 469. In

13

addition, the bankruptcy court concluded that Pope's filing did not constitute unreasonable and vexatious conduct under 28 U.S.C. § 1927. *Id.* at 470. Accordingly, the bankruptcy court denied the motion for sanctions. *See id.* at 471.

The Court reviews the bankruptcy court's decision to deny sanctions under Federal Rule of Bankruptcy Procedure 9011 and 28 U.S.C. § 1927 for abuse of discretion. *See Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1013-14 (7th Cir. 2004). In doing so, this Court is mindful that the bankruptcy court has the "best information about the patterns of [its] cases," and is "in the best position to determine whether a legal position is far enough off the mark to be frivolous or whether an attorney conducted an adequate inquiry under the particular circumstances of a case." *See Corley*, 388 F.3d at 1013.

RMS and RPG contend that the bankruptcy court denied their sanctions motion based on a conclusion that Pope had an adequate basis to argue that Schiff represented it through the common interest doctrine, when in fact Pope had argued that Schiff represented it under a formalized attorney-client relationship. RMS and RPG argue that the bankruptcy court abused its discretion by denying their sanctions motion on a basis that Pope had not asserted. As RMS and RPG themselves recognize, however, Pope asserted in its briefing on the disqualification motion that "[a]t a minimum, the [Schiff Check] demonstrates that Schiff formerly represented the concurrent interests of both Pope and RMS relating to the Project. Their mutual interests were embodied in the Project." This Court finds that the bankruptcy court did not abuse its discretion when it denied RMS and RPG's motion for sanctions.

**ORDERED:** The bankruptcy court's judgments and orders are affirmed.

ENTER:

*[signature: George W. Lindberg]*

George W. Lindberg
Senior U.S. District Judge

DATED:  February 8, 2011